FILED

2014 SEP 30 PM 3: 57

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                               CASE NO.   8:14-CR-190-T-24EAJ

STEPHEN MAYER                                    18 U.S.C. § 1349
                                                 18 U.S.C. § 1343
                                                 18 U.S.C. § 981 - Forfeiture
                                                 28 U.S.C. § 2461 - Forfeiture

### SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT ONE
### (CONSPIRACY TO COMMIT WIRE FRAUD AFFECTING A FINANCIAL INSTITUTION)

**A. Introduction**

At times material to this Superseding Indictment:

1.      GreenPoint Mortgage Funding, Inc. was a New York corporation and a wholly-owned subsidiary of GreenPoint Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"). In November 2004, North Fork Bank, which was also FDIC-insured, acquired GreenPoint Bank. GreenPoint Mortgage then operated as a wholly-owned subsidiary of North Fork Bank. In December 2006, Capital One Financial Corporation acquired North Fork Bank and, in August 2007, North Fork Bank merged into Capital One, N.A., whose deposits were FDIC insured. From that point on, GreenPoint Mortgage operated as a wholly-owned subsidiary of Capital One, N.A. Thus, at all times material to

this Superseding Indictment, GreenPoint Mortgage Funding was a wholly-owned subsidiary of a federally insured financial institution, as defined by Title 18, United States Code, Section 20, and any losses to GreenPoint Mortgage affected the FDIC insured parent bank.

2. Stephen Mayer was a resident of the Middle District of Florida who formed and/or controlled the following corporations for the purpose of buying and selling real estate: Josh One Son Investment Corp., Regal Windsor Homes, Inc., BanqUSA Select Group, Inc., Galoma Investment Group, Inc., KCSC, Inc., Chen Garza Inc., and Invest Fund Corp USA, Inc.

### B. The Conspiracy

3. From an unknown date, but at least in or around September 2003, and continuing thereafter up to and including in or around 2007, in the Middle District of Florida and elsewhere,

STEPHEN MAYER,

the defendant herein, did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit wire fraud affecting a financial institution, that is, to knowingly execute, by way of a wire or radio communication in interstate and foreign commerce, a scheme and artifice to defraud the federally insured financial institutions in their capacity as mortgage lenders and to obtain money and property from the federally insured financial institutions in their capacity as mortgage lenders through materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United

States Code, Section 1343.

### C. The Manner and Means of the Conspiracy

4. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others:

(a) It was part of the conspiracy that Mayer would and did form or have others form shell companies for the purpose of buying and selling real estate in the Middle District of Florida.

(b) It was further part of the conspiracy that Mayer would and did recruit investors and coconspirators with good credit with whom he formed shell companies.

(c) It was further part of the conspiracy that using these shell companies, Mayer and his conspirators/investors would and did purchase real estate, primarily low value single family homes, in the Middle District of Florida.

(d) It was further part of the conspiracy that Mayer would and did immediately resell the property he bought to an investor / coconspirator with good credit for an inflated price. These investors frequently obtained mortgages in order to purchase the property from Mayer and/or shell companies under Mayer's control.

(e) It was further part of the conspiracy that Mayer would and did instruct and assist his coconspirators/investors to quick claim deed the property back to him or shell companies under his control and promised that he would make the mortgage payments. The investors / coconspirators remained the obligator

on the mortgages. When Mayer failed to make the mortgage payments, these properties went into foreclosure leaving Mayer's investors/coconspirators responsible for the debts.

(f) It was further part of the conspiracy that Mayer would and did instruct his coconspirator/investors to frequently sell and resell the same property (commonly referred to as "flipping"), each time raising the price, in order to increase the value of the property. Because Mayer instructed his investors/coconspirators to quick claim deed the property back to him, he was able to resell the same property over and over again to investors / coconspirators, each time as the seller and each time making a profit, without incurring any mortgages.

(g) It was further part of the conspiracy that the conspirators obtained mortgages from private lenders and federally insured financial institutions based on false statements as to their incomes and other material information.

(h) It was further part of the conspiracy that Mayer, as seller, would provide money to his investors/coconspirators, as buyers, for their down payments on the subject properties after the closing date and from the proceeds of the sale. This information was not disclosed to the lenders and therefore, the HUD-1 Settlement Statements submitted to the lenders were false. These false representations induced lenders to make mortgage loans based upon non-existent buyer equity.

(i) It was further part of the conspiracy that when Mayer's investors / coconspirators, acting at Mayer's direction, obtained mortgages, the

parties involved in the transactions, including the lenders, would and did send interstate wires to and from the Middle District of Florida.

(j) It was a further part of the conspiracy that conspirators would and did misrepresent, conceal, hide, and cause to be misrepresented, concealed, and hidden, acts done in furtherance of the conspiracy and the purpose of those acts.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH NINE
### (WIRE FRAUD AFFECTING A FINANCIAL INSTITUTION)

### A. Introduction

5. The grand jury re-alleges and incorporates by reference Part A of Count One of this Superseding Indictment as though fully set forth herein.

### B. Scheme to Defraud

6. From a date unknown, but at from least in or around September 2003, and continuing thereafter up to and including in or around 2007, in the Middle District of Florida and elsewhere,

STEPHEN MAYER,

the defendant herein, knowingly devised and intended to devise a scheme and artifice to defraud affecting a financial institution and to obtain money and property of the federally insured financial institution in its capacity as mortgage lenders by means of false and fraudulent pretenses, representations and promises relating to material facts, and aided and abetted others in the same.

### C. The Manner and Means of the Scheme

7. The grand jury re-alleges and incorporates by reference Part C of Count One of this Superseding Indictment as though fully set forth herein.

### D. Interstate Wires

8. On or about the dates as set forth below, in the Middle District of Florida and elsewhere,

STEPHEN MAYER,

the defendant herein, for the purpose of executing the aforesaid scheme and artifice to defraud affecting a financial institution, and aiding and abetting others, did knowingly transmit and cause to be transmitted in interstate and foreign commerce by means of wire and radio communications, certain writings, signs and signals, that is, the interstate transfer of funds by wire from Greenpoint Mortgage Funding, Inc., in New York, to the recipient title company's bank account in Florida, as described below, each transmission constituting a separate count:

| Count | Date of Offense | Originating Account | Recipient Account | Amount |
|---|---|---|---|---|
| TWO | 10/12/2006 | Greenpoint Mortgage Funding, Inc., North Fork Bank, New York | Compass Land and Title, Bank of Tampa, Tampa, Florida | $249,916.00 |
| THREE | 10/12/2006 | Greenpoint Mortgage Funding, Inc., North Fork Bank, New York | Compass Land and Title, Bank of Tampa, Tampa, Florida | $31,005.00 |
| FOUR | 11/17/2006 | Greenpoint Mortgage Funding, Inc., North Fork Bank, New York | Scott D. LaRue Attorney Trust Account, Bank of America, Largo, Florida | $316,390.36 |

| FIVE | 11/17/2006 | Greenpoint Mortgage Funding, Inc., North Fork Bank, New York | Scott D. LaRue Attorney Trust Account, Bank of America, Largo, Florida | $39,350.00 |
|---|---|---|---|---|
| SIX | 12/04/2006 | Greenpoint Mortgage Funding, Inc., North Fork Bank, New York | Scott D. LaRue Attorney Trust Account, Bank of America, Largo, Florida | $217,935.36 |
| SEVEN | 12/04/2006 | Greenpoint Mortgage Funding, Inc., North Fork Bank, New York | Scott D. LaRue Attorney Trust Account, Bank of America, Largo, Florida | $27,252.38 |
| EIGHT | 12/04/2006 | Greenpoint Mortgage Funding, Inc., North Fork Bank, New York | Scott D. LaRue Attorney Trust Account, Bank of America, Largo, Florida | $207,528.04 |
| NINE | 12/04/2006 | Greenpoint Mortgage Funding, Inc., North Fork Bank, New York | Scott D. LaRue Attorney Trust Account, Bank of America, Largo, Florida | $25,947.50 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURES

1. The allegations contained in Counts One through Nine of this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(2).

2. From his engagement in the violations alleged in Counts One through Nine of this Superseding Indictment, charging conspiracy to commit wire fraud affecting a financial institution, in violation of Title 18, United States Code,

Section 1349, and wire fraud affecting a financial institution, in violation of Title 18, United States Code, Sections 1343, the defendant,

STEPHEN MAYER,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), all of his right, title, and interest in any property, real or personal, which constitutes, or is derived from, proceeds obtained directly or indirectly, as a result of the violations, including, but not limited to, a sum of money equal to at least $1,528,790, representing the amount of proceeds obtained as a result of the conspiracy alleged in Count One of the Superseding Indictment.

    3.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL,

_____
Foreperson

A. LEE BENTLEY, III
United States Attorney

By: _____
AMANDA L. RIEDEL
Assistant United States Attorney

By: _____
KELLEY HOWARD-ALLEN
Assistant United States Attorney

By: _____
ROBERT MOSAKOWSKI
Assistant United States Attorney
Chief, Economic Crimes Section

**UNITED STATES DISTRICT COURT**
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

STEPHEN MAYER

**SUPERSEDING INDICTMENT**

Violations:

Title 18, United States Code, Sections 1343 and 1349

A true bill,

_____
Foreperson

Filed in open court this <u>30th</u> day

of September 2014.

_____
Clerk

Bail  $_____

2014 SEP 30 PM 3:5⁻
CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA
FILED
GPO 863 525