UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:14-cr-190-T-24EAJ

STEPHEN MAYER

### UNITED STATES' MOTION FOR FORFEITURE MONEY JUDGMENT

Pursuant to 18 U.S.C. § 982(a)(2), and Rule 32.2(b)(2), Federal Rules of Criminal Procedure, the United States of America, through the undersigned Assistant United States Attorney, moves for a forfeiture money judgment against defendant Stephen Mayer in the amount of $4,404,200, representing the proceeds he obtained as the result of the conspiracy to commit wire fraud as charged in count one of the superseding indictment.

In support of its motion, the United States submits the following memorandum of law.

### MEMORANDUM OF LAW

**I.   Statement of Facts**

   **A.   Allegations Against the Defendant**

   1.   On or about September 30, 2014, a nine-count superseding indictment was returned charging defendant Stephen Mayer in count one with conspiracy to commit wire fraud, affecting a financial institution, contrary to the provisions of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349.  Doc. 30. Counts two through nine charge the defendant with substantive wire fraud

offenses, affecting a financial institution, in violation of 18 U.S.C. § 1343. Doc. 30.

    2.    The forfeiture allegations of the superseding indictment provided notice to the defendant that, pursuant to 18 U.S.C. § 982(a)(2), the United States intended to seek a forfeiture money judgment in the amount of $1,528,790.00, representing the amount of proceeds the defendant obtained as a result of the conspiracy to commit wire fraud, as well as substitute assets under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1). *Id.*, pp. 4-6.

    **B.**    **Findings of Guilt**

    3.    On January 20, 2015, a jury trial commenced, and on January 29, 2015, the trial concluded. Docs. 79, 90. The jury found Stephen Mayer guilty of all nine offenses charged in the superseding indictment. Doc. 91.

    4.    The defendant's sentencing is currently scheduled for May 5, 2015. Doc. 96.

**II.**    <u>**Applicable Law**</u>

    **A.**    **Forfeiture Statute**

Forfeiture of property in this case is governed by 18 U.S.C. § 982(a)(2), which provides that upon conviction for a violation of, or a conspiracy to violate, section 1343 of Title 18, affecting a financial institution, the court shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as the result of such

violation. *See* 18 U.S.C. § 982(a)(2). Pursuant to 18 U.S.C. § 982(b)(1), the procedures for the forfeiture and disposition of property are governed by 21 U.S.C. § 853.

### B. Court's Determination of Forfeiture

Rule 32.2, Federal Rules of Criminal Procedure, governs the criminal forfeiture of property based on a defendant's conviction for the offense giving rise to the forfeiture. Rule 32.2(b)(1) requires that as soon as practical after verdict or finding of guilty, the court must determine what property is subject to forfeiture under the applicable statute based on evidence already in the record, or any additional evidence submitted by the parties and accepted by the court as relevant and reliable. Fed. R. Crim. P. 32.2(b)(1)(A) and (B). If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. Fed. R. Crim. P. 32.2(b)(1)(A).

### C. Authority for Money Judgments

The United States seeks forfeiture money judgments in those instances where a defendant no longer has the actual dollars or traceable property in his possession, or the government cannot locate the assets. In these cases, the obligation to forfeit simply takes the form of a forfeiture money judgment in favor of the United States. *See United States v. Padron*, 527 F.3d 1156, 1161-62 (11th Cir. 2008) (district court may issue a forfeiture order in the form of a money judgment in mail fraud case); *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003) (money judgment equal to value of commission and untainted money

used to facilitate money laundering); *United States v. Conner*, 752 F.2d 566, 576 (11th Cir. 1985) (ordering money judgment for amount of proceeds obtained from RICO violations).

**D.     Factual Basis for Money Judgment**

From around September 2003 through around 2007, Stephen Mayer conspired to defraud GreenPoint Mortgage Funding, Inc., a subsidiary of Greenpoint Bank, whose deposits were insured by the Federal Deposit Insurance Corporation, and other lenders by causing fraudulent wire transfers from the lenders to the title companies, and ultimately to companies and credit partners under Stephen Mayer's control for the purchase of real properties.  The purpose of the conspiracy was to obtain mortgage funds from lenders to enrich Stephen Mayer and further the scheme.  Mayer used the mortgage funds for his own personal expenses, down payments on the mortgages, and in some instances, mortgage payments and/or renovations.

To achieve his goal, Mayer recruited partners with good credit, known as credit partners, with whom he formed the following shell companies for the purpose of buying, transferring and selling real estate:  1) Josh One Son Investment Corp. with Christian Heredia; 2) Banqusa Select Group, Inc. (Banqusa) with David Garza, and Jorge A. Lopez, Jr.; 3) KCSC, Inc. (KCSC) with Kung-Chung Chen, Lopez, and Garza; 4) Regal Windsor Homes, Inc., with Christian Heredia; 5) Chen Garza, Inc. with Chen Stanley and David Garza;  6) Invest Fund Corp USA, Inc. with Shin Sheng Chen.  Mayer controlled these

companies, and the bank accounts established in the names of these companies.

Mayer generally purchased lower value properties through his shell companies and sold the properties to credit partners at inflated or higher prices, usually agreeing to make repairs, rent the property and make mortgage payments.  These credit partners obtained mortgages from private lenders, and in some cases from hard money lenders, to purchase the properties from Mayer and the companies he controlled based on false representations regarding their income and/or assets and other materially false information on HUD-1 Settlement Statements submitted to lenders.  The false representations induced the lenders to make mortgage loans based, in large part, on non-existent buyer equity and/or false income and assets.  In some cases, Mayer paid his credit partners a commission of a few thousand dollars for each sale.

Mayer usually instructed his credit partners to quit claim deed the property back to Mayer, or companies controlled by Mayer, but his credit partners remained liable for the mortgage loans.  When Mayer failed to keep making mortgage payments, these properties went into foreclosure leaving Mayer's credit partners responsible for the debt.

Because the credit partners quit claimed the properties back to him, Mayer was able to resell the same property over and over again (commonly referred to as "flipping"), each time making a profit without incurring liability for the mortgages.  Mayer used title companies that improperly accepted the down

payments on the properties after the closing. Thus, Mayer was able to use the lenders' mortgage money as down payments on the properties. The lender witnesses testified at trial that that these loans would not have been made had the lender known their funds were being used to make the down payment on the purchased property. Mayer kept the remaining mortgage funds after all previous mortgages and closing costs were satisfied, but he failed to keep current on the mortgage payments.

The attached chart details the mortgages obtained by Mayer through his companies and his credit partners. These are the last mortgages obtained on the listed properties for the final sale of those properties. All previous mortgages on the properties were paid off in full (including any late fees or pending foreclosures) at the time of closing. These mortgages constitute the proceeds of the conspiracy charged in count one. *See Exhibit A, Chart of Mortgages.* The mortgage amounts were extracted from a chart titled "Total Losses – Charged Properties," attached hereto as *Exhibit B*, which was admitted into evidence as Government's Exhibit 18R at trial. These mortgages total $4,404,200.

Because the specific property traceable to the conspiracy is no longer available, i.e., the actual funds obtained or property purchased with the funds, the United States seeks a forfeiture money judgment in the amount of $4,404,200 against Mayer, for which he is liable, and requests that the Court enter such pursuant to Rule 32.2(b)(2).

### III.     Conclusion

For the reasons stated above, the United States requests that the Court, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Rule 32.2(b)(2), enter a forfeiture money judgment against defendant Stephen Mayer in the amount of $4,404,200, representing the amount of proceeds the defendant obtained as a result of the conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, as charged in count one of the indictment.

As required by Federal Rule of Criminal Procedure 32.2(b)(4)(B), the United States requests that the Court include the forfeiture when orally pronouncing the sentence and in the judgment.  *See* Fed. R. Crim. P. 32.2(b)(4)(A) and (B).

Finally, the United States requests that the Court retain jurisdiction to enter orders necessary for the forfeiture and disposition of any property belonging to the defendant that the government is entitled to seek under

21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), as substitute assets in satisfaction of the defendant's money judgment.

                        Respectfully submitted,

                        A. LEE BENTLEY, III
                        United States Attorney

By:   *s/James A. Muench*
      JAMES A. MUENCH
      Assistant United States Attorney
      Florida Bar Number 472867
      400 North Tampa Street, Suite 3200
      Tampa, Florida  33602
      (813) 274-6000 - telephone
      (813) 274-6220 - facsimile
      E-mail: james.muench2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Amanda L. Riedel
Assistant United States Attorney

Kelley Howard-Allen
Assistant United States Attorney

Bjorn Brunvand, Esquire

                        *s/James A. Muench*
                        JAMES A. MUENCH
                        Assistant United States Attorney