UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO.: 8:14-CR-190-T-24EAJ

STEPHEN MAYER
_____/

## SENTENCING MEMORANDUM AND MOTION FOR IMPOSITION OF A REASONABLE SENTENCE

Defendant, STEPHEN MAYER, by and through the undersigned counsel, pursuant to 18 U.S.C. §§ 3553, 3661, and Rule 32(i) of the Federal Rules of Criminal Procedure, hereby moves this Honorable Court to impose a sentence of time served or significantly below the applicable Guidelines range and in support thereof, presents the following relevant information for this Court to consider in determining a reasonable sentence to impose in this case:

### Sentencing Considerations

Mr. Mayer has no criminal history. Probation has proposed a guideline range for Mr. Mayer as set forth in the PSR of 108 to 135 months. Counsel argues that the guideline sentence recommended by probation in the PSR is excessive given the circumstances of this case.

I.   **The Fraud Guideline is Entitled to Little, if any, Deference Because it is Not the Result of Empirical Data and Analysis[1]**

The advisory guideline range in this case is determined by utilizing U.S.S.G. §2B1.1, which applies to various types of fraud offenses. This guideline is not the result of empirical analysis. Yet, the guideline ranges for fraud cases have increased substantially over the last 20 years. Thus, because the United States Sentencing Commission ("Commission") failed to rely on empirical data when making these changes – and thus failed to fulfill its institutional role – sentencing courts have great discretion to disagree, on policy grounds, with §2B1.1's sentencing recommendations. *See Spears v. United States*, 129 S.Ct. 840, 843 (2009) (explaining that when the Commission fails to fulfill its institutional role, a district court may vary from the guidelines "based on *policy* disagreements with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case.").

When the Commission adopted the original guidelines in 1987, it sought to ensure that white collar offenders faced "**short** but definite period[s] of confinement." U.S. Sent'g Comm'n, *Fifteen Years of Guideline Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform*, p. 56 (2004). The Commission thus reduced the

---

[1] The language, arguments, and case law in this section are, for the most part, borrowed from and

availability of probation and adopted a fraud guideline that subjected defendants to no more than 78 months imprisonment. To justify this increase in the rate of confinement above pre-guideline practice, the Commission explained that "the definite prospect of prison, though the term is short, will act as a significant deterrent to many of these crimes, particularly when compared with the status quo where probation, not prison, is the norm." U.S.S.G. ch. 1, intro., pt. 4(d) (1987). However, as noted above, the Commission has abandoned its original goal of ensuring "short but definite" sentencing, and has instead progressively increased the prison sentenced for fraud.

For example, in 1987 the base offense level would be increased only by 11 levels for a loss amount exceeding $5 million. Now, the increase for a mere $1 million loss is 16 levels. The Commission has adopted this drastic shift in sentencing policy without the support of any empirical data demonstrating the penological value of its substantial increases in sentencing severity. *United States v. Aldelson*, 441 F.Supp. 506 (S.D.N.Y. 2006). In *Aldelson*, the Court recognized that in some cases the calculation of a sentence pursuant to the fraud guidelines could lead to a "patently unreasonable" result, thus requiring the Court to place greater emphasis on other sentencing factors to achieve a just result. *Id*. Aldelson had been convicted of a number of offenses related to securities fraud. Although the evidence at trial established that Aldelson had joined the conspiracy years after

it began, he nevertheless was still held accountable for a loss amount of approximately $59 million. Given that amount of loss, the guidelines suggested a sentence of life imprisonment. *Id.* at 507. Finding such a result to be indefensible, the Court sentenced Mr. Aldelson to 42 months imprisonment, noting:

> What drove the Government's calculation in this case, more than any single factor, was the inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of intended or actual loss. As many have noted, the Sentencing Guidelines, because of their arithmetic approach and also in an effort to appear "objective," tend to place great weight on putatively measurable quantities, such as the weight of drugs in narcotic cases or the amount of loss in financial cases, without, however, explaining why it is appropriate to accord such huge weight to such factors.

*Aldeson*, 441 F.Supp. at 509 (citing Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 69 (1998)).

The Court reasoned that, sometimes, application of the fraud guidelines and their "fetish with abstract arithmetic" can result in a travesty of justice if "not cabined by common sense." Thus, it concluded that, in order to avoid an absurd result, it would fashion a sentence that gave some consideration to the guideline but which focused primarily on the 18 U.S.C. § 3553(a) factors. *Id.* at 512. In imposing the 42 month sentence, the Court found that the crimes were egregious, but it also recognized that the defendant had no prior criminal history, that he had not originated the scheme and had only participated in it for a few months, and that

he had achieved many positive things during his otherwise law-abiding life. *Id.* at 512-13. That sentence, the Court found, was sufficient to achieve the sentencing purposes of retribution and deterrence. *Id.* at 514.

When the Commission fails to fulfill "its characteristic institutional role" of developing a particular guideline, or its later amendments, based upon empirical data or national experience demonstrating that its recommendations serve the purposes of sentencing, the district court has the discretion to conclude that the resulting advisory guideline range "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *United States v. Kimbrough*, 552 U.S. 85, 109 (2007). Because the fraud guidelines are not the result of the Commission's institutional role of collecting and analyzing empirical data to establish guidelines consistent with the purposes of sentencing, the guidelines for fraud are entitled to little deference. Accordingly, the Court should fashion a sentence that is reflective of punishment sufficient, but not greater than necessary after due consideration of the factors set forth in 18 U.S.C. §3553(a). Counsel would suggest that in this case, a guideline sentence would frustrate the §3553(a) factors.

## II.    The 18 U.S.C. § 3553(a) Factors

The facts and circumstances surrounding Mr. Mayer's offense, do not call for the imposition of the sentence of imprisonment suggested under the Guidelines.

In *Gall v. United States*, 522 U.S. 38, 128 S.Ct. 586, 594 (2007), the Supreme Court held that district courts are not required to make a finding of extraordinary circumstances in order to impose a sentence below the Guidelines recommendation. Instead, the Guidelines, "as a matter of administration and to secure nationwide consistency[,] ... should be the starting point and the initial benchmark," but they are not the only consideration in sentencing. *Id.* at 596.

After properly calculating the Guidelines range, the district court must then make an individual assessment of the case and consider each of the factors set forth in 18 U.S.C. § 3553(a) before deciding upon a sentence. *Gall v. United States*, 522 U.S. 38, 128 S.Ct. at 596-97. Those factors include:

> (1) the nature and circumstance of the offense;
> (2) the history and characteristics of the defendant;
> (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> (4) the need to protect the public; and
> (5) the Guidelines range, as well as
> (6) the kinds of sentences available;
> (7) the need to avoid sentencing disparities among similar defendants who have been found guilty; and
> (8) the need to provide restitution to victims of the offense.

*United States v. Martin*, 455 F.3d 1227, 1236 (11th Cir. 2006) (citations omitted); *see also United States v. Talley*, 431 F.3d 784 (11th Cir. 2005). The Guidelines range is thus only one of many factors that courts must consider in determining a reasonable sentence. *Id.; Gall*, 128 S.Ct. at 597, n.6.

The Eleventh Circuit, furthermore, has held that a sentence within the Guideline range cannot be presumed to be reasonable per se in light of *United States v. Booker*, 543 U.S. 220 (2005). *Tally*, 431 F.3d at 786. Thus, while the court affirmed that the Guidelines remain "central" to the sentencing process, it went on to observe that, "[t]o say that a sentence within the Guidelines range is 'by itself' reasonable is to ignore the requirement that the district court, when determining a sentence, take into account the other factors listed in section 3553(a)." Likewise, as the Supreme Court noted in *Gall*:

> The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. … It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Gall*, 128 S.Ct. at 597-98 (internal citations omitted).

As such, a consideration of the various 18 U.S.C. § 3553(a) factors applicable in the instant case, including the defendant's unique history and characteristics, the need for the sentence imposed, and the need to provide just punishment and protect the public, all establish that a sentence below the applicable Guidelines range would be a punishment sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### A. The Need for the Sentence Imposed

#### Mr. Mayer's Criminal History

Aside from the instant case, Mr. Mayer has not been in any criminal trouble in his life. Such demonstrates that Mr. Mayer is not a danger to the community. In arriving at an appropriate sentence the court should balance punishment, deterrence and rehabilitation. Counsel would propose that a sentence well below the guidelines range is reasonable and appropriate; balancing the goals of sentencing. Mr. Mayer and others will be deterred by a below the guidelines sentence. Such a sentence is clearly punishment, considering the circumstances of this case. Furthermore, a sentence well below the applicable Guidelines range will not only provide just punishment in this case, but such sentence will afford adequate deterrence to the criminal conduct in this case, will reflect the seriousness of the offense, and will promote respect for the law. Thus, Mr. Mayer asks this Court to consider the fact that aside from the instant case he has been in zero criminal trouble during his lifetime and has no criminal history when determining a reasonable sentence to impose in this case.

### B. Need to Avoid Sentencing Disparities

Mr. Mayer is the sole defendant in his indictment, however Markus Esop was indicted in a separate, but related case. *See* Middle District of Florida case no: 8-12-CR-237-T-17AEP. Mr. Mayer asks this Court to consider the involvement of

Markus Esop, his initial sentence, the fact that his self surrender was extended indefinitely and he was ultimately sentenced to probation when determining a reasonable sentence in this case.

Markus Esop had an extensive background in the mortgage industry, was a mortgage broker, was an investor and was extensively involved in the circumstances that gave rise to the fraud allegations in the instant case, both as a mortgage broker and as an "investor."

Mr. Mayer respectfully asks this Court to take into consideration the involvement of Markus Esop, individually or through Naomi Esop and/or Hermina Belle Fobare in the instant conspiracy as compared to Mr. Mayer's involvement, as well as his ultimate sentence of probation, when determining a reasonable sentence in this case. He also asks this Court to consider the facts that he has been incarcerated for over a year and that he is going to be deported when determining the sentence to impose in this case.

## CONCLUSION

Respectfully, the proposed guideline range is excessive and sentence of time served followed by supervised release satisfies the need for punishment and is fair. Pursuant to the enumerated 18 U.S.C. §3553(a) factors, a sentence of time served followed by supervised release would satisfy the goals of sentencing.

Respectfully Submitted,

s/ *Bjorn E. Brunvand*
BJORN E. BRUNVAND, ESQ.
BJORN E. BRUNVAND, P.A.
Florida Bar # 0831077
CJA Counsel for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 4, 2015, I electronically filed the following with Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ *Bjorn E. Brunvand*
BJORN E. BRUNVAND, ESQ.
BJORN E. BRUNVAND, P.A.
615 Turner Street
Clearwater, FL 33756
Telephone: 727-446-7505
Facsimile: 727-446-8147
E-Mail: bjorn@acquitter.com
Florida Bar # 0831077
Counsel for Defendant